UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RED LAKE BAND OF CHIPPEWA INDIANS, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Civil Action No 1:20 cv-03817 (CKK) |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) ) |
| Federal Defendant. | ) ) |

## FEDERAL DEFENDANT'S RESPONSE TO
## PLAINTIFFS' SUPPLEMENTAL AUTHORITY

On January 29, 2021, Plaintiffs filed a letter discussing the opinion issued in *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, No. 20-5197, 2021 WL 244862 (D.C. Cir. Jan. 26, 2021) (*Standing Rock* Op.). *See* ECF No. 34 (Pls.' Letter). Far from supporting Plaintiffs' motion for a preliminary injunction, the *Standing Rock* opinion offers nothing to show that Plaintiffs are likely to succeed on the merits of their claims.

First, the parties have already repeatedly briefed the relevance of the environmental review at issue in *Standing Rock*. *See* Mem. of Law in Supp. of Pls.' Mot. for Prelim. Inj. at 4, 5, 7, 15-17, 21, ECF No. 2-2 (Pls.' Mem.); Def-Intervenor's Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. at 17, 27, ECF No. 28; Fed. Def.'s Resp. in Opp'n to Pls.' Mot. for Prelim. Inj. at 38, ECF No. 29 (Fed. Def.'s Resp.); Pls.' Reply in Supp. of Prelim. Inj. at 2-3, 8-9, ECF No. 33. The more-recent *Standing Rock* decision does not add anything to support Plaintiffs' case.

Second, Plaintiffs repeat the same flawed premise apparent in their motion for a preliminary injunction. Namely, Plaintiffs contend that "the Corps did not independently analyze oil spills." Pls.' Letter at 1; *see also* Pls.' Mem. at 15 (claiming that the Corps' record is

1

"entirely void" of any analysis of the potential impacts of oil spills and leaks). Plaintiffs simply cannot support this claim. *See* Fed. Def.'s Resp. at 12-19, 21-25. To the extent it was required, the Corps analyzed potential impacts of oil spills and leaks. *See*, *e.g.*, Section 404 EA at 19-23, 28, 51, 58, 126-27, Section 408 EA at 4, 10-17.[1]

Third, contrary to Plaintiffs' allegations, the Corps fully reviewed the potential environmental consequences of issuing the Corps Permit for Replacement Line 3. Plaintiffs point to the *Standing Rock* court's statement regarding Native American tribes' "unique role" and the importance of treating their criticisms with "appropriate solicitude." Pls.' Letter at 1 (citing *Standing Rock* Op. at 15). The record demonstrates that solicitude here, as the Corps' conclusions are supported by extensive tribal coordination and consultation. Fed. Def.'s Resp. at 9, 18, 36. The Corps and tribal representatives conducted a comprehensive tribal cultural resources survey and Enbridge is required to comply with the Avoidance, Mitigation, and Implementation Plan for Construction, which implements protection measures for resources identified by the tribes. *Id.* at 9, 36. Further, the Corps here examined both the "probabilities of potentially harmful events and the consequences if those events come to pass." Pls.' Letter at 1 (quoting *Standing Rock* Op. at 26) (additional citation omitted). The Corps concluded that the spill prevention and leak detection measures will greatly lower the risk of long undetected pinhole leaks and will reduce the risk of a spill resulting in environmental and human impacts. Fed. Def.'s Resp. at 16. The Corps also examined the potential consequences to wild rice, fish, birds, mammals, hunting and fishing, and other aspects of the human environment if an accidental oil spill or leak did occur. *Id.* at 16-18.

---

[1] Copies of the Section 404 EA and Section 408 EA were filed as Ex. 2, ECF No. 32.

In addition, the Corps' analysis of the potential effects of oil spills and leaks encompassed each of the other areas noted by Plaintiffs. *See* Pls.' Letter at 1 (citing *Standing Rock* Op. at 19–26). The Corps examined Enbridge's safety record including the Line 6B failure and the subsequent changes Enbridge made to its operations. *See* Section 408 EA at 16-17. The Corps further considered the potential impacts of winter conditions on oil spill response, such as difficulties in detecting winter oil spills, timing and containment impacts if ice cover is not strong enough to support people and equipment, and challenges presented by high winds, blizzards, and extreme cold. *Id*. at 15-16. The Corps noted that Enbridge has "access to specialized response equipment in case of a spill during harsh winter conditions." *Id*. at 16. The Corps also examined modeling of worst-case oil spill scenarios at eight sites across northern and central Minnesota, including the Lake Superior watershed, that were intended to be representative of the entire pipeline. *Id*. at 10-12.

Hence, it is clear that the Corps fully complied with NEPA and Plaintiffs' references to the *Standing Rock* decision do not alter that conclusion. Accordingly, Federal Defendant respectfully submits that the *Standing Rock* decision does not support Plaintiffs' position, and that Plaintiffs' motion for a preliminary injunction should be denied.

Respectfully submitted this 1st day of February, 2021.

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division


/s Sara E. Costello
SARA E. COSTELLO (KS Bar No. 20898)
MATTHEW MARINELLI
AMANDA M. STONER
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division

3

        U.S. Department of Justice
Post Office Box 7611
Washington, DC 20044-7611
202-305-0484
sara.costello2@usdoj.gov

MARK L. WALTERS
Trial Attorney
HEATHER E. GANGE
Senior Counsel
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611
Washington, DC 20044-7611

OF COUNSEL:
MELANIE CASNER
Assistant Counsel
Office of Chief Counsel
U.S. Army Corps of Engineers